IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Lorraine Edmond McCoy, ) | C/A No. 0:10-765-HFF-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Lorraine Edmond McCoy ("McCoy"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

In May 2006, McCoy applied for SSI and DIB. McCoy's applications were denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on September 8, 2008 at which McCoy appeared and testified and was represented by David Bornhorst, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision dated October 24, 2008 finding that McCoy was not disabled. (Tr. 9-21.)

McCoy was born in 1964 and was 44 years old at the time of the ALJ's decision. (Tr. 93.) She has a limited education and past relevant work experience as a cashier and sales clerk. (Tr. 107.)

McCoy alleges disability since February 22, 2006 due to human immunodeficiency virus/Acquired Immune Deficiency Syndrome (HIV/AIDS) and back pain. (Tr. 106-07.)

The ALJ made the following findings and conclusions:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since February 22, 2006, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: AIDS; gastric MALT lymphoma; depression; degenerative disc disease of the cervical and lumbar spine; myofascial pain of the spine; DeQuervain tendonitis of the right wrist; and bilateral carpal tunnel syndrome (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) with no reaching or looking overhead; occasional handling for gross manipulation and fingering for fine manipulation with the left upper extremity; and no fine or gross manipulation with the right upper extremity. The claimant is also limited to simple, repetitive tasks with no work with the public. She can, however, accept supervisory feedback and interact appropriately with supervisors and co-workers.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant was born on [REDACTED], 1964, and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).



9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 22, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 11-21.)

McCoy filed a request for Appeals Council review which was denied on February 20, 2010, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

PJG

 (3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

 (4) whether the claimant can perform [her] past relevant work; and

 (5) whether the claimant's impairments prevent [her] from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829



F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

McCoy raises the following issues for this judicial review:

I.  Was the ALJ determination that the medical findings and opinions of Ms. Christine Hamolia were entitled to no more weight than the opinion of a lay person not supported by substantial evidence and contrary to the Commissioner's regulations?

II. Did the ALJ err in failing to consider all of Plaintiff's impairments and their combined effect on Plaintiff's ability to work?

(Pl.'s Br., ECF No. 11.)

## DISCUSSION

**A.    Opinion of Christine Hamolia**[1]

McCoy argues that the ALJ erred in evaluating the opinion of Christine Hamolia. In considering Hamolia's opinion, the ALJ stated that Hamolia is a "licensed social worker" with the

---

[1] In the record and in the briefs, Christine Hamolia's last name is also spelled "Homolia" and "Hamoila." For consistency, the court has adopted the plaintiff's spelling and refers to her as "Hamolia" in this Report and Recommendation.

Page 5 of 15



Medical University of South Carolina and, after thoroughly discussing her opinion, the ALJ "allowed [it] no more weight than lay opinion." (Tr. 16, 17.) McCoy asserts that Hamolia is not a licensed social worker but rather is "a registered nurse with both a nursing degree and a master in science degree who is certified to be a clinical nurse specialist." She argues that this error renders the ALJ's analysis of Hamolia's opinion unsupported. (Pl.'s Br. at 7, ECF No. 11 at 7.) The Commissioner concedes that the ALJ erroneously referred to Hamolia as a licensed social worker rather than registered nurse; however, the Commissioner argues that this error did not render the ALJ's opinion unsupported, as opinions from both licensed social workers and registered nurses are evaluated under the same category pursuant to agency policy. Specifically, both of these sources are considered "medical sources who are not acceptable medical sources." See SSR 06-03p; see also 20 C.F.R. §§ 404.1513(d), 416.913(d).

The Social Security Regulations distinguish between opinions from "acceptable medical sources" and "other sources." See 20 C.F.R. §§ 404.1513(d), 416.913(d). Social Security Ruling 06-03p further discusses "other sources" as including both "medical sources who are not acceptable medical sources" and "non-medical sources." Only acceptable medical sources can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose opinions may be entitled to controlling weight. SSR 06-03p. However, medical sources who are not acceptable medical sources may provide opinions reflecting "the source's judgment about some of the same issues addressed in medical opinions from 'acceptable medical sources,' including symptoms, diagnosis and prognosis, and what the individual can still do despite the impairment(s), and physical or mental restrictions." SSR 06-03p. Social Security Ruling 06-03p further provides:



> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision . . . .

Finally, the ALJs are instructed to apply the factors for evaluating the opinions of acceptable medical sources, which are listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d), in evaluating the opinions from other sources with the understanding that not every factor may apply. These factors include: (1) whether the physician has examined the claimant, (2) the treatment relationship between the physician and the claimant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, (5) whether the physician is a specialist, and (6) other factors that may support or contradict the opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d).

In this matter, it is undisputed that Hamolia does not qualify as an acceptable medical source, such as a licensed physician or licensed or certified psychologist. See SSR 06-03p. Further, the parties appear to agree that Hamolia qualified as a medical source who is not an acceptable medical source. Examples of these include: "nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists." Id. However, the parties disagree as to whether the ALJ's erroneous statement that Hamolia was a licensed social worker and conclusion that Hamolia's opinion should be given no more weight than a lay opinion warrants remand.

The records indicate that McCoy saw Hamolia from June 2007 to August 2008 for her depression and anxiety. (Tr. 432-71.) On August 18, 2008, Hamolia completed a mental residual



functional capacity questionnaire regarding McCoy. Hamolia stated that McCoy had major depression and anxiety with current and past year global assessment of functioning ("GAF") scores of 60. Hamolia checked the box indicating that McCoy was "unable to meet competitive standards" with regard to her ability (1) to complete a normal workweek without interruptions from psychologically based symptoms and (2) to perform at a consistent pace without an unreasonable number and length of rest periods. Hamolia stated that McCoy was "seriously limited, but not precluded" with regard to her ability (1) to maintain regular attendance and be punctual within customary, usually strict tolerances and (2) to understand, remember, and carry out detailed instructions. She found that McCoy had "limited but satisfactory" abilities (1) to remember work-like procedure; (2) to maintain attention for a two-hour segment; (3) to work in coordination with or proximity to others without being unduly distracted; (4) to make simple work-related decisions; (5) to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (6) to deal with normal work stress; (7) to set realistic goals or make plans independently of others; (8) to deal with stress of semiskilled and skilled work; (9) to interact appropriately with the general public; and (10) to travel in an unfamiliar place. Finally, Hamolia found that McCoy had "unlimited or very good" abilities in the remaining categories of mental abilities and aptitude needed to do various categories of work. Hamolia opined that McCoy would be absent from work about four days per month. (Tr. 425-29.)

The ALJ thoroughly discussed Hamolia's opinion in the decision and provided specific reasons for rejecting portions of her opinion which, if accepted, may have resulted in a conclusion that McCoy is disabled. The ALJ observed that Hamolia is not a treating, examining, or consultative physician, which the parties do not dispute. The ALJ found that limiting McCoy to simple, repetitive



tasks with no work with the public addresses Hamolia's opinion that McCoy had "unlimited or very good" abilities to understand, remember, and carry out very short and simple instructions and had limited abilities to interact with the public. However, the ALJ rejected Hamolia's opinion that McCoy was "seriously limited, but not precluded" with regard to her ability to maintain regular attendance and be punctual within customary, usually strict tolerances and that McCoy would miss about four days per month of work. The ALJ concluded that these opinions were inconsistent with the other evidence of record because "the record [did] not establish that the claimant has been habitually late or absent from scheduled medical appointments nor [had] any other treating source indicated that the claimant's impairments or treatment would cause her to be absent from work on a frequent basis." (Tr. 17.) The ALJ also noted that these opinions were inconsistent with Hamolia's finding that McCoy had a current GAF of 60, which "denotes only moderate symptoms or moderate difficulty in social, occupational, or school functioning." (Id.) For these reasons, the ALJ reduced the weight given to Hamolia's opinion, stating that she allowed it "no more weight than [a] lay opinion." (Id.)

Upon review of the record and the parties' briefs in this matter, the court finds that McCoy has failed to demonstrate that the ALJ's erroneous statement that Hamolia was a licensed social worker rather than a registered nurse with both a nursing degree and a master in science degree who is certified to be a clinical nurse specialist renders the decision unsupported by substantial evidence. As argued by the Commissioner, opinions from licensed social workers and registered nurses are both evaluated as medical sources who are not acceptable medical sources. See 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p. McCoy has not shown that Hamolia's opinion would be entitled to additional weight if the ALJ had acknowledged that she was a registered nurse with



additional qualifications rather than a licensed social worker. Contrary to McCoy's argument, the ALJ's opinion shows that she considered many of the factors listed in the regulations in evaluating Hamolia's opinion, such as her treatment relationship, the supportability of her opinion, and its consistency with the record. See 20 C.F.R. §§ 404.1527(d), 416.927(d). After considering these factors, the ALJ concluded that Hamolia's opinion was entitled to "no more weight than [a] lay opinion."[2] (Tr. 17.)

Moreover, as discussed above, the ALJ recognized that many of the limitations in Hamolia's opinion were included in McCoy's residual functional capacity ("RFC"). Further, the ALJ provided specific reasons for rejecting Hamolia's opinion with regard to McCoy's ability to maintain regular attendance and be punctual within customary, usually strict tolerances and her monthly work absences. Accordingly, McCoy has failed to demonstrate that the ALJ's evaluation of Hamolia's opinion was unsupported by substantial evidence or controlled by an error of law.

**B.     The Listings**

At Step 3 of the sequential analysis, the Commissioner must determine whether the claimant has an impairment that meets or equals the requirements of one of the Listings and is therefore presumptively disabled. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. §§ 404.1525(d),

---

[2] The court disagrees with McCoy's assertion that this statement indicates that the ALJ failed to consider Hamolia's opinion as a medical source who is not an acceptable medical source. The ALJ's analysis of the factors set forth in the regulations shows that she considered, but rejected, Hamolia's opinion as a treating medical source.



416.925(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. §§ 404.1508, 416.908.

When a claimant has more than one impairment, the ALJ must consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923. In Walker v. Bowen, 889 F.2d 47, 49-50 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit explained:

> [A] failure to establish disability under the listings by reference to a single, separate impairment does not prevent a disability award. It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity. In recognizing this principle, this Court has on numerous occasions held that in evaluating the effect[] of various impairments upon a disability benefit claimant, the Secretary must consider the combined effect of a claimant's impairments and not fragmentize them. . . . As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.

Id. at 49-50 (internal citations omitted). District courts within the Fourth Circuit applying the holding in Walker have held that a simple statement concluding that a claimant's impairments or combination of impairments do not meet a Listing, without more, is insufficient to enable a court to review whether that determination is supported. Courts have held that an ALJ's failure to adequately explain his evaluation of the combined effects prevents appropriate judicial review, as the court is unable to say whether substantial evidence supports the Commissioner's decision, and requires a remand for such explanation. See, e.g., Saxon v. Astrue, 662 F. Supp. 2d 471 (D.S.C. 2009); Washington v. Comm'r of Soc. Sec., 659 F. Supp. 2d 738 (D.S.C. 2009); Rabon v. Astrue, C/A No. 4:08-3442-GRA, 2010 WL 923857 (D.S.C. Mar. 9, 2010) (unpublished).



As stated above, the ALJ found that McCoy's AIDS, gastric MALT lymphoma, depression, degenerative disc disease of the cervical and lumbar spine, myofascial pain of the spine, DeQuervain tendonitis of the right wrist, and bilateral carpal tunnel syndrome constituted severe impairments. The ALJ also considered the following impairments and found that they were not severe: GERD (gastroesophageal reflux disease), right knee pain, fibromyalgia, and bilateral shoulder pain. McCoy argues that the ALJ erred in failing to consider the combined effects of all of her impairments. McCoy's argument is based on the fact that she contends that the ALJ did not discuss or explain how her severe impairments affected one another and how the combined effect of all of her impairments impacted her ability to work. The Commissioner contends that unlike the decision in Walker, the ALJ's decision is sufficiently detailed to demonstrate that she engaged in the required analysis. In reply, McCoy disagrees and

> submits that the pain associated with lumbar and cervical spine impairments together with the pain associated with bilateral carpal tunnel syndrome and DeQuervain tendonitis significantly impacts on her depression. When the psychological effects of having AIDS and lymphoma are considered in conjunction with the effects of chronic and severe pain, the impact of these impairments on an individual's mental status clearly would be substantial.

(Pl.'s Reply Br. at 5, ECF No. 13 at 5.)

In this case at Step Three of the sequential analysis, the ALJ found that McCoy "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (Tr. 13.) Unlike in Walker and its progeny, the ALJ here extensively discussed each of McCoy's impairments and performed a detailed residual functional capacity analysis that clearly demonstrates that the ALJ considered McCoy's impairments in

combination. For example, the ALJ's decision specifically accounted for McCoy's combination of impairments in determining that McCoy had the RFC to perform only a limited range of light work. In the ALJ's discussion of the evidence of record, including the medical evidence and the plaintiff's testimony at the hearing, she noted that the state agency consulting physicians had opined that McCoy remained capable of medium work. However, the ALJ specifically found "after consideration of the entire record, that the claimant is capable of only light work." (Tr. 17.) The ALJ further limited McCoy "from reaching overhead and from more than occasional handling for gross manipulation and fingering for fine manipulation with the left upper extremity and from any fine or gross manipulation with the right upper extremity" due to her DeQuervain tendonitis of the right wrist and her bilateral carpal tunnel syndrome. (Tr. 18.) Additionally, in consideration of McCoy's AIDS, gastric MALT lymphoma, cervical and lumber degenerative disc disease, and myofascial pain of the spine, the ALJ stated that McCoy was restricted to light work with no looking overhead. (Tr. 19.) Furthermore, in considering her impairments the ALJ found that McCoy had (1) mild restrictions in activities of daily living based on emergency room reports and indications in the record that she could bathe, dress, prepare simple meals, drive, and perform household chores; (2) moderate difficulties in social functioning based on testimony that she shopped at odd hours to avoid crowds and attended church on an occasional basis and was described as cooperative and compliant during treatment and an evaluation; (3) moderate difficulties in concentration, persistence or pace; and (4) no episodes of decompensation. (Tr. 13-14.)

      The court finds the ALJ's discussions to be sufficient to demonstrate that she considered McCoy's impairments in combination, and the decision includes sufficient findings regarding the combination of her impairments for the court to review the ALJ's conclusion on this issue.



Accordingly, McCoy has failed to show that the ALJ's decision is controlled by an error of law or is unsupported by substantial evidence.[3] See Thornsberry v. Astrue, C/A No. 4:08-4075-HMH-TER, 2010 WL 146483, *5 (D.S.C. Jan. 12, 2010) (unpublished) ("Accordingly, the court finds that while the ALJ could have been more explicit in stating that his discussion dealt with the combination of Thornsberry's impairments, his overall findings adequately evaluate the combined effect of Thornsberry's impairments. Any error on the part of the ALJ in failing to use explicit language is harmless.").

## RECOMMENDATION

For the foregoing reasons, the court finds that McCoy has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

March 16, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[3] Moreover, the court observes that it is the plaintiff's burden to present evidence that her condition meets or equals a listed impairment. Kellough v. Heckler, 785 F.2d 1147, 1152 (4th Cir. 1986); see also 20 C.F.R. §§ 404.1512, 404.1515. McCoy's conclusory arguments that her impairments would impact one another, without more, are insufficient to demonstrate that the ALJ's decision is not supported by substantial evidence.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).